IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MERRILL IRON & STEEL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 14-221 |
| vs. | ) Magistrate Judge Robert C. Mitchell |
| | ) |
| BLAINE CONSTRUCTION | ) |
| CORPORATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION**

Mitchell, M.J.:

Presently pending is a Motion for Partial Summary Judgment filed on behalf of Plaintiff Merrill Iron & Steel, Inc. ("Merrill") [ECF No. 166]. For the reasons stated herein, the motion will be denied.

**I.  Introduction**

This case concerns the construction of a $1.2 billion rolled-metal processing and water-treatment facility for Defendant Allegheny Ludlum Steel Corporation ("ATI") in Brackenridge, Pennsylvania (the "Project"). On or about June 6, 2011 ATI contracted with Defendant Blaine Construction Corporation ("Blaine") to design and build a portion of the Project. Blaine subcontracted with Defendant HOH Engineers, Inc. ("HOH") to design the Project. Blaine then subcontracted with Merrill, via a purchase order, to supply fabricated structural steel and miscellaneous metals for the Project based on Blaine/HOH's design. On September 28, 2011

1

Blaine also subcontracted with Defendant Century Steel Erectors ("Century") to erect the fabricated structural steel that Merrill supplied.

Disagreements arose as to whether the Project complied with the tolerance requirements in Blaine's contract with ATI. The Complaint in this action was filed of February 14, 2014. [ECF No. 1]. On August 18, 2014, the parties filed a Consent Motion [ECF No. 111] to consolidate this action with *Blaine Construction Corporation v. Allegheny Ludlum, LLC, et al.*; Case No. 2:14-cv-00689-RCM (the "Blaine Action"). The parties have consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c). [ECF Nos. 27, 28, 30, 37, 44, 63, 64].

On November 6, 2015, Merrill filed this pending motion for partial summary judgment with brief in support, as well as a concise statement of material facts and appendix thereto. [ECF Nos. 166, 167, 168, and 169].

On November 10, 2015, we held a telephonic status conference with all parties represented, at which time the parties were instructed to attempt to resolve legal disputes mentioned therein. Fact discovery was extended to June 30, 2016. [ECF No. 170]. We also instructed counsel that at the next scheduled status conference dated March 15, 2016, the court would schedule deadlines for the filing of dispositive motions.[1] [ECF No. 170].

Nevertheless, Merrill's first motion for partial summary judgment having been filed prior to the November 10, 2015 conference, the Court entered a briefing schedule that same day as to that motion. [ECF No. 171]. On November 25, 2015, Blaine timely filed a Memorandum in Opposition and Response to Merrill's Concise Statement of Undisputed Material Facts and

---

[1] Since the November 10, 2015 conference the following motions have been filed in addition to the one now pending: Century Steel's Motion for Partial Summary Judgment [ECF No. 172] and Merrill's Motion for Partial Summary Judgment that Blaine violated the Pennsylvania Contractor and Subcontractor Payment Act. [ECF No. 198]. Those motions are not addressed herein.

2

Statement of Additional Facts. [ECF Nos. 184, 185]. On December 4, 2015, Merrill filed a Reply Brief [ECF No. 189] in addition to a Responsive Concise Statement in Support of its Reply Memorandum in Support of its Motion For Partial Summary Judgment. [ECF No. 190]. The matter having been fully briefed, it is ripe for consideration.

The Court exercises diversity jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, and the suit is between citizens of different states. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claims occurred in this judicial district.

## II. **Factual Background**

The pending motion seeks summary judgment as to a narrow issue: the maximum damages that can be assessed against Merrill for any delays on the construction project at issue in this litigation. Because the Court writes primarily for the parties, only the facts relevant to this motion will be discussed.

Unless otherwise noted, the following facts are not in dispute.

On June 8, 2011, Blaine accepted Merrill's proposal to supply fabricated steel and other metals for the Project by way of a letter of intent. That letter of intent stated a purchase order would follow based on Merrill's proposal. Once Blaine sent its initial draft purchase order, Blaine and Merrill entered into negotiations concerning the precise terms of Merrill's subcontract. One of the provisions of the purchase order that Merrill and Blaine specifically negotiated was the liquidated damages clause. The liquidated damages clause is at the center of Merrill's motion.

On October 26, 2011, Merrill sent to Blaine its modifications to the draft purchase order in which Merrill struck several lines of Article 5 entitled "Time for Performance." Specifically, Merrill struck the following language:

> [Merrill] shall be liable for all costs and damages, of whatever nature, resulting from [Merrill's] failure to deliver, according to BLAINE'S schedule, Goods in strict accordance with the plans and specifications and approved by [ATI], such costs and damages can be backcharged to or offset against any outstanding balance otherwise owed [Merrill] under this PO or any other agreement. Further, such costs and damages include but are not limited to any liquidated or actual damages assessed by [ATI] against BLAINE and any other costs, losses, and damages incurred by BLAINE because of delays or difficulties attributable to [Merrill's] late and/or deficient performance. [Merrill's] failure to provide submittals as and when required or [Merrill's] failure to provide Goods as warranted in this PO or [Merrill's] failure to maintain delivery as scheduled are, jointly and severally, material breaches of this PO and shall entitle BLAINE to terminate this PO for default.

[ECF No. 166-6 at 1].

In response, on October 27, 2011, representatives of Merrill and Blaine negotiated the purchase order language via telephone, the results of which were memorialized in an October 27, 2011 letter from Merrill to Blaine. As to Article 5, the parties negotiated the following liquidated damages clause to be included for their principal's consideration:

> Liquidated Damages shall apply if the Purchase Order complete Delivery Date per area is not Achieved. [Merrill] shall pay $5000.00 per day thereafter as Liquidated Damages until successful completion of the completed delivery date. [Merrill's] maximum liability for delayed [sic] liquidated damages shall be limited to $ 150,000.00. Liquidated Damages will not apply if release for mill order, completed Design for Fabrication, and Shop Drawing approval for fabrication dates listed in the Purchase Order are not achieved.

Subsequently, Blaine further revised Merrill's revisions to Article 5 by changing only the last portion of the liquidated damages clause to read "Delivery dates shall be adjusted accordingly if release for mill order, completed Design for Fabrication, and Shop Drawing approval for fabrication dates listed in the Purchase Order are not achieved." Blaine's revision made no change to either the per diem or maximum damage amounts to which Merrill could be liable based on project delays.

4

On November 11, 2011, Blaine sent to Merrill a final executed copy of the Purchase Order. The Purchase order has sixteen Articles. Based on the parties' negotiations, Article 5 of the Purchase Order consisted of the following:

> 5. TIME OF PERFORMANCE. Time is of the essence for this PO. [Merrill] accepts BLAINE'S ~~right to~~ schedule performance and deliveries by [Merrill] of the Goods and to adjust such schedules as BLAINE in good faith deems best for the Project as a whole. Deliveries are to be made strictly in accordance with BLAINE'S schedule and directions, as may be adjusted by BLAINE, as to time, quantities, and location. [Merrill] shall arrange ~~and pay~~ for ~~suitable storage of all Goods~~ deliver~~ed~~y, ~~regardless of the location specified for delivery~~. BLAINE reserves the right to cancel, reject or refuse any delivery made prior to or subsequent to the times specified. If delivery schedules cannot be maintained, [Merrill] must notify BLAINE in writing immediately. ~~[Merrill] shall be liable for all costs and damages, of whatever nature, resulting from the [Merrill's] failure to deliver, according to BLAINE'S schedule, Goods in strict accordance with the plans and specifications and approved by the Owner; such costs and damages can be backcharged to or offset against any outstanding balance otherwise owed [Merrill] under this PO or any other agreement. Further, such costs and damages include but are not limited to any liquidated or actual damages assessed by the [ATI] against BLAINE and any other costs, losses, and damages incurred by BLAINE because of delays or difficulties attributable to the [Merrill's] late and/or deficient performance. [Merrill's] failure to provide submittals as and when required or [Merrill's] failure to provide Goods as warranted in this PO or [Merrill's] failure to maintain delivery as scheduled are, jointly and severally, material breaches of this PO and shall entitle BLAINE to terminate this PO for default.~~ *Liquidated Damages shall apply if the Purchase Order complete Delivery Date per Area is not achieved. [Merrill] shall pay $5000.00 per day thereafter as Liquidated Damages until successful completion of the Complete delivery date. [Merrill's] maximum liability for delayed liquidated damages shall be limited to $ 150,000.00.* Delivery Date shall be adjusted accordingly if release for mill order, completed Designs for Fabrication, and Shop drawing approval for fabrication dates listed in the Purchase Order are not achieved.

(emphasis added to show liquidated damages provision).

In its brief in opposition, Blaine denies Merrill's characterization that Article 5 defines the damages Merrill would face in the event of "*any* delays in the construction of the Project", positing that Article 5 applies to delivery-related delay damages only. Blaine relies in part on Article 2. On or before October 26, 2011, Merrill's Pete Sullivan proposed that Article 2 of the purchase order

(entitled "APPROVAL OF GOODS") be modified by deleting the following clause: "Seller shall pay BLAINE for all additional costs, including all delays and disruptions in performance, incurred by BLAINE or others as a result of defective or nonconforming goods, including changes or substitutions not specifically authorized in advance."  In his October 27, 2011 letter, Merrill's Richard Arnoldy removed the reference to Sullivan's proposed deletion in Article 2.

Thus, the provision remained in the purchase order and became a final contract term:

> 2. APPROVAL OF GOODS. . . . Seller shall pay BLAINE for all additional costs, including all delays and disruptions in performance, incurred by BLAINE or others as a result of defective or nonconforming goods, including changes or substitutions not specifically authorized in advance.

Furthermore, Blaine argues that Article 14 of the purchase order, entitled "INDEMNITY" governs Merrill's obligation to indemnify Blaine for third-party claims. Merrill Ex. E (Doc. 166-9, p. 13).  The provision with respect to third-party delay claims provides:

> 14. INDEMNITY.  To the fullest extent allowed by law, Seller shall defend, indemnify, reimburse, save harmless and exonerate BLAINE and the Owner from and against all claims, liabilities, losses, expenses and damages, of whatever nature, which arise from or be caused by, in whole or in part, any act or omission of Seller with respect to this PO or to the subject Project.  Seller's obligations under this paragraph shall apply to any personal injury, sickness, death, property damage, of any kind for which Seller's conduct or Goods are alleged as a cause or contributing factor.  . . . Should any delay by Seller, nonconformance of Goods, or nonperformance by Seller cause or contribute to any delay to the Project, Seller shall pay, indemnify and exonerate BLAINE.

Merrill denies that this fact is undisputed, stating that by its plain terms, Merrill's obligations "under this paragraph" – Article 14 – related to indemnity for certain types of claims, specifically "personal injury, sickness, death, [and] property damage." Merrill "acknowledges that Blaine is entitled to be indemnified by Merrill for damages related to personal injury, sickness, death, and property damage, but to the extent the damages sought in connection with such claims are delay-related, those damages are liquidated by the liquidated damages provision in Article 5.

6

[ECF No. 190 at ¶ 6].

### III. Standard of Review

Summary judgment is appropriate where there is no genuine issue of material fact as to a particular claim or any part of a claim, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). While the non-moving party is entitled to have all inferences drawn in its favor, to prevail the "opposing party may not rest upon the mere allegations in or denials of the pleadings; its response . . . must set forth specific facts showing there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). A genuine factual dispute is "material" to the claim or issue on which summary judgment is sought only if it might affect the outcome of the claim or issue under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Thus, to withstand summary judgment, a non-moving party must demonstrate the existence of evidence that would support a judgment in its favor at trial on the issue. *Id.; Saldana*, 260 F.3d at 232.

### IV. Discussion

Merrill argues that the undisputed material facts in the record demonstrate that as a matter of law Merrill cannot be liable for damages related to delays in an amount above $150,000 because the liquidated damages clause expressly states that any damages against Merrill related to project delays "shall be limited to $150,000." According to Blaine, however, when read together with other provisions of the purchase order, it is clear that summary judgment should be denied because: (1) the liquidated damages clause applies only to delay damages resulting from Merrill's late delivery of the steel, and not to delay damages resulting from other causes (such as timely delivery of defectively fabricated steel); and (2) the cap on delay damages in the liquidated damages clause

7

applies only to Blaine's delay damages arising from late delivery of steel, and is not intended to limit liability for third-party claims against Blaine for damages caused by Merrill.

Under Pennsylvania law, "a party that retains legally enforceable liquidated damages will be barred from seeking actual damages." *Blue Mountain Mushroom Co., Inc. v. Monterey*, 246 F.Supp.2d 394, 400 (E.D. Pa. 2002) (citing *Carlos R. Leffler, Inc. v. Hutter*, 696 A.2d 157, 162 (Pa.Super.1997) ("[P]arties who agree to include a liquidated damages clause in their contract, and do so properly, cannot later claim entitlement to actual damages; rather, in keeping with the law of contracts, the parties must be bound by their bargain.")). 13 Pa. Cons.Stat. Ann. § 2718(a) states:

Liquidated damaged in agreement.-Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.

Furthermore, "once a court finds a legally enforceable liquidated damages clause, any evidence of actual damages is inadmissible under Pennsylvania contract law as irrelevant to the action." *Blue Mountain*, 246 F.Supp.2d at 400 (citing, e.g., *Commonwealth v. Mitchell*, 517 Pa. 203, 216 n. 2, 535 A.2d 581 (1987)). This rule governs even where actual damages exceed the liquidated damage amount retained. *Id.* ("Holding plaintiffs to the liquidated amount when a plaintiff alleges actual damages exceed liquidated damages mirrors the rule that the breaching party must pay liquidated damages despite the fact that actual damages may be lower."). A liquidated damages clause must be reasonable at the time the contract was signed, regardless of what actual damages may have resulted from the breach. *See Leffler*, 696 A.2d at 162.

We are also guided by basic contract interpretation principles. The Court must consider the plain meaning of the writing itself, and the entire writing must be considered: the "[w]hole

instrument must be taken together in arriving at contractual intent." *Smith v. Steckman Ridge, LP*, 38 F.Supp.3d 644, 653 (W.D. Pa.) *aff'd*, 590 F. App'x 189 (3d Cir. 2014), citing *Murphy v. Duquesne Univ. of The Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001).

As stated in *Westmoreland Opportunity Fund, L.L.C. v. Zappala,* 2014 WL 3420129, at *5 (W.D. Pa. July 11, 2014), such intent is to be determined from reading the entire agreement as a whole and "[c]ourts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed." *Id, citing Murphy,* 777 A.2d at 429 (citations omitted). One part of a contract cannot be interpreted so as to annul another part, and a contract must be construed, if possible, to give effect to all of its terms. *Capek v. Devito,* 564 Pa. 267, 767 A.2d 1047, 1050 (Pa. 2001); *Cerceo v. DeMarco,* 391 Pa. 157, 137 A.2d 296, 298 (Pa. 1958); *Flatley v. Penman,* 429 Pa. Super. 517, 632 A.2d 1342, 1344 (Pa. Super.1993), *appeal denied,* 537 Pa. 620, 641 A.2d 586 (Pa.1994); *Second Federal Sav. and Loan Ass'n. v. Brennan,* 409 Pa. Super. 581, 598 A.2d 997, 1000 (Pa. Super.1991). Clauses that seem in conflict must be construed, where possible, as consistent with one another. *Flatley,* 632 A.2d at 1344 ("Clauses in a contract should not be read as independent agreements thrown together without any consideration of their combined effect.").

Having fully considered the parties' arguments and after a careful analysis and review of the contract terms, we find that plaintiff's motion for summary judgment should be denied. Merrill's interpretation is not reasonable when Article 5 is read together with other applicable and specific provisions of the purchase order. The mere fact that the parties do not agree on the proper construction does not make a contract ambiguous. *Pac. Employers Ins. Co. v. Glob. Reinsurance*

*Corp. of Am.,* 693 F.3d 417, 426 (3d Cir. 2012), citing *Metzger v. Clifford Realty Corp.,* 327 Pa. Super. 377, 476 A.2d 1, 5 (1984).

First we note that a plain reading of the liquidated damages clause shows that it applies only to delivery-related delay damages. Article 5 is entitled "Time of Performance" and references "delivery" eight times. There is no language to support the notion that the liquidated damages provision and the cap on liability for late deliveries applies to delay damages caused by defective or nonconforming goods, which is addressed separately in Article 2.

Merrill's liability for delays for nonconforming goods is governed by Article 2, which reads that "Seller shall pay BLAINE for all additional costs, including delays and disruptions in performance, incurred by BLAINE or others as a result of defective or nonconforming goods . . ." There is no reference to a liquidated damages or cap on Merrill's liability in Article 2, but rather, it states that Merrill will be liable for "all additional costs . . . incurred by BLAINE or others."

Moreover, the indemnity provision of Article 14 specifically provides that Merrill will be liable for claims against Blaine by third parties that are caused by "delay by Seller, nonconformance of Goods, or nonperformance of Seller." There is no wording or evidence that the liquidated damages provision of Article 5 was intended to apply to Merrill's indemnification obligations for third-party claims against Blaine. Article 5 is silent as to third-party, non-liquidated damages claims for delay. Article 14 specifies Merrill's obligation to indemnify Blaine for delay claims of third parties, including claims that are caused by "delay by Seller, nonconformance of Goods or nonperformance b Seller [that] cause or contribute to any delay to the Project." This interpretation of all parts of the contract gives effect to all of its terms.

## V. Conclusion

In sum, the provisions of the purchase order show that the parties intended the cap on Merrill's liability for delay damages to apply only to those damages incurred by Blaine alone that were cause by late deliveries, and that Merrill can remain liable for all other delay-related costs, including delay costs that result from "defective or nonconforming goods," as well as delay costs which third parties claim against Blaine.

Accordingly, Merrill's motion is denied. An appropriate Order follows.

>/s/ *Robert C. Mitchell*
>Robert C. Mitchell
>U.S. Magistrate Judge

cc: record counsel via CM-ECF

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MERRILL IRON & STEEL, INC., ) | |
|     Plaintiff, ) | |
| ) | Civil Action No.: 14-221 |
| vs. ) | Magistrate Judge Robert C. Mitchell |
| ) | |
| BLAINE CONSTRUCTION ) | |
| CORPORATION, *et al.*, ) | |

## **ORDER**

AND NOW, to-wit, this 23rd day of February, 2016, for the reasons stated in the Opinion filed contemporaneously herewith, it is hereby ORDERED, ADJUDGED and DECREED that the Motion for Partial Summary Judgment filed on behalf of Plaintiff Merrill Iron & Steel, Inc. ("Merrill") [ECF No. 166] be and the same hereby is DENIED.

/s/  *Robert C. Mitchell*
Robert C. Mitchell
U.S. Magistrate Judge

cc:  record counsel via CM-ECF