IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MERRILL IRON & STEEL, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Civil Action No.: 14-221 |
| vs. | ) | |
| | ) | |
| BLAINE CONSTRUCTION CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION**

ROBERT C. MITCHELL, United States Magistrate Judge

Presently pending is a Motion for Partial Summary Judgment filed on behalf of Century Steel Erectors Company ("Century Steel"). [ECF No. 172]. For the reasons stated herein, the motion will be denied.

## I. Introduction

This case concerns the construction of a $1.2 billion rolled-metal processing and water-treatment facility for Defendant Allegheny Ludlum Steel Corporation ("ATI") in Brackenridge, Pennsylvania (the "Project"). On or about June 6, 2011 ATI contracted with Defendant Blaine Construction Corporation ("Blaine") to design and build a portion of the Project. Blaine subcontracted with Defendant HOH Engineers, Inc. ("HOH") to design the Project. Blaine then subcontracted with Merrill, via a purchase order, to supply fabricated structural steel and miscellaneous metals for the Project based on Blaine/HOH's design. On September 28, 2011 Blaine also subcontracted with movant Century Steel to erect the fabricated structural steel that Merrill supplied (the "Subcontract").

1

Disagreements arose as to whether the Project complied with the tolerance requirements in Blaine's contract with ATI. The Complaint in this action was filed of February 14, 2014. [ECF No. 1]. On August 18, 2014, the parties filed a Consent Motion [ECF No. 111] to consolidate this action with *Blaine Construction Corporation v. Allegheny Ludlum, LLC, et al.*; Case No. 2:14-cv-00689-RCM (the "Blaine Action").

On November 10, 2015, we held a telephonic status conference with all parties represented, at which time the parties were instructed to attempt to resolve certain legal disputes discussed therein. Fact discovery was extended to June 30, 2016. [ECF No. 170]. We also instructed counsel that at the next scheduled status conference dated March 15, 2016, the court would schedule deadlines for the filing of dispositive motions. [ECF No. 170].

On November 11, 2015, Century Steel filed this pending motion for partial summary judgment with brief in support, as well as a Concise Statement of Material Facts and Appendix thereto. [ECF Nos. 172, 173, 174, 175]. On December 3, 2015, Blaine filed a response [ECF No. 186], as well as a Response and Statement of Additional Material Facts [ECF No. 187], and Appendix thereto. [ECF No. 188]. On December 10, 2015, Century filed a reply. [ECF No. 194].

The matter is now ripe for disposition. The parties have consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c). [ECF Nos. 27, 28, 30, 37, 44, 63, 64].

## II.     **Factual Background**

Unless otherwise noted, the following facts are not in dispute. On June 6, 2011, ATI entered into a contract with Blaine pursuant to which Blaine would serve as the design-builder for a significant portion of the construction of ATI's Project. On September 28, 2011, Blaine entered into a subcontract with Century Steel pursuant to which Century Steel would provide

certain job site services on the Project related to the erection of structural steel that was engineered and fabricated by Blaine, and then delivered to the job site for Century Steel to assemble. Century Steel completed its work on the Project and demobilized on or about December 19, 2013. Disagreements between ATI and Blaine arose as to whether the project complied with the tolerance requirements, *inter alia*, in Blaine's contract with ATI. Specifically these tolerances refer to TR-13, an industry publication containing design, fabrication and erection standards for steel, that was incorporated by reference into Blaine's contract with ATI, and then into Blaine's subcontracts with HOH, Merrill and Century Steel.

Century Steel's James Schueler (appearing as a corporate representative pursuant to Rule 30(b)(6)) acknowledged that Century Steel did not meet the requirements of TR-13. He testified as follows:

> Q: And you [Century] were able to align the rail to meet Tech 13, right?
>
> A: No.
>
> Q: Century wasn't able to align the rail to meet Tech 13?
>
> A: No.
>
> * * *
>
> Q: You said, when Century finished their work, some areas did not meet 13, and I understand Century may have reasons why it didn't. I just want to know what areas.
>
> A: Off the top of my head, I couldn't tell you that right now. You would have to look at our survey data, and all that survey data that we would get would be given to Blaine for them to digest and tell us what to do to bring it to those tolerances…

Another Century Steel 30(b)(6) corporate representative, Rubbie Greenwald, testified that TR-13 was merely a "goal" to try to achieve, but that it was not reasonably attainable. He further testified that:

3

> [Century] knew there were areas of the rail that were not perfectly aligned. We understood that, based on the interpretation of Tech 13 report, where those areas were and we pointed them out …Our belief is and was that we did everything we could to get it this close. What else do you want us to try to do?

To resolve those disagreements, Blaine and ATI entered into an agreement on July 14, 2015. Century Steel, Merrill, and HOH did not participate in the agreement. Blaine acknowledged that the building did not comply with certain requirements of the Contract and agreed to perform corrective work, as follows: (1) Blaine acknowledged that the building was out of compliance with TR-13, and agreed to perform additional corrective work to bring it into compliance with TR-13; (2) Blaine would provide an extended warranty and provide yearly inspections of the building for the next two years; and (3) Blaine would also repair/replace the gussets that it had determined by hiring an independent engineer were in fact bending excessively. ATI agreed to release Blaine's remaining retainage. According to Blaine, that retainage was not due Century Steel because Blaine has not accepted Century Steel's work. Century Steel asserts that when ATI released to Blaine all amounts remaining on the contract, that included the retainage due Century Steel.

ATI and Blaine further agreed that the warranty period on the Contract commenced on July 8, 2014; ATI has had beneficial occupancy of the building at least as of this date. According to Century Steel, while Blaine will be performing additional repairs on the Project, these will be performed as part of the warranty that comes into operation following ATI's acceptance of the work. Blaine asserts that ATI continues to assert that final acceptance of the Project has not occurred. In its Supplemental Responses and Objections to Century's First Set of Requests for Admissions and Interrogatories, ATI Responded:

**Request for Admission No. 2:** Admit that Final Acceptance of the Project by ATI in accordance with Section 12.4 of the Blaine Contract has not occurred to date.

**Response:** Admitted.

[ECF No. 188-1 at 4]

By letter dated August 4, 2015, well after this suit commenced, Blaine notified Century Steel that it will not be releasing Century Steel's retainage that it has received from ATI, but rather Blaine has "decided to set up a separate interest bearing account into which [it] will deposit the $2,408,608.56 so that the parties can have transparency as to the whereabouts of these funds during the pendency of the litigation." In its response dated August 10, 2015, Century Steel noted that "there is no justification for withholding [the] contract monies" due Century Steel and demanded "immediate payment of all contractual retainage, without further delay." Century Steel's counsel also sent a response on August 12, 2015, putting Blaine on notice that a release of retainage within 14 days after receipt is required by the Pennsylvania Contractor and Subcontractor Payment Act ("CASPA"). Blaine responded to that letter on August 17, 2015, reiterating its contention that no payment was due to Century Steel at that time. Blaine acknowledged in its letter on August 17, 2015 that its reference to "noncompliance issues" was to the "Initial Disclosures exchanged by all of the parties" in September 2014.

Payment was made by ATI to Blaine on or before August 19, 2015. According to Century Steel, Blaine valued the "deficiency items" or "backcharges," for which Blaine alleged Century Steel is responsible to date at $160,155.45 in a spreadsheet dated September 18, 2015. Blaine disputes this, noting that the Spreadsheet also shows backcharge items for noncompliance issues and deficiency items which Blaine is claiming in this lawsuit, but which have not yet been assigned as between Century Steel, Merrill, and/or HOH. Those items are identified as "unassigned" in the "Responsible Party" column and total more than $1 million. For example, Item 95, for which Blaine is seeking to recover $785,006.68 relates to girder shims in areas

where fabrication tolerances are documented to be within TR13 fabrication tolerances. Additionally, Blaine notes that Item 92, for which Blaine is seeking $253,716.57, is also unassigned, and relates to costs to remediate "Gusset Plate" issues. Blaine further argues that the Spreadsheet also does not show all of the costs incurred by Blaine in completing the most recent remediation that it agreed to perform in the Agreement with ATI. Those costs, which exceed $1.5 million, are also yet to be allocated as between Century Steel, Merrill and/or HOH.

To date, and despite demand, Blaine has refused to pay to Century Steel the remaining retainage balance, which Century Steel contends is $1,370,681.71 and, as Blaine admits, is not less than $1,357,350.50.

According to Blaine, as of December, 2013, it had spent approximately $2,500,000 in added costs to bring the building into compliance with TR-13. A portion of that was paid to Century Steel by way of change orders in order to correct what Century Steel alleged were design or fabrication errors by HOH or Merrill, respectively. The parties dispute whether Century Steel was paid for all this extra work. Since the July 14, 2015 Agreement between Blaine and ATI, Blaine claims it has been performing corrective work related to TR-13 and the gussets, and the work was completed in the early morning hours of September 28, 2015, at an approximate cost of $1,500,000. Accordingly, Blaine estimates that it has spent to date a total of approximately $4,000,000 for corrective work associated with the TR-13 and gusset issues. It argues that all of those expenditures result from deficiencies in design, fabrication and/or erection. HOH contends that any problems with TR-13 compliance and the gussets do not result from any breaches by HOH, but rather from improper fabrication (Merrill) and/or improper erection (Century Steel). Merrill contends that any problems with TR-13 compliance and the gussets do not result from any breaches by Merrill, but rather from improper design (HOH)

6

and/or improper erection (Century Steel). Century Steel contends that any problems with TR-13 compliance and the gussets do not result from any breaches by Century Steel, but rather from improper design (HOH) and/or improper fabrication (Merrill). Century Steel contends that lack of coordination by Blaine, the alleged "engineer of record," between design, fabrication and erection, and lack of quality control by Blaine as required by its Contract with ATI, were major causes of any lack of compliance.

The parties contest whether Century Steel received adequate and timely notice under the law. According to Blaine, it advised Century Steel on multiple occasions of deficiency items involving Century Steel's work, both before and after Blaine's July, 2015 Agreement with ATI. It cites to its e-mails to Century Steel dated June 5, 2012 and November 22, 2013, and Blaine's letter to Century Steel dated November 21, 2013, as well as Blaine's August 4, 2015 letter. On the other hand, Century Steel characterizes these items as being corrected during the course of the Project, and thus do not constituted "deficiency items" for the purpose of our analysis herein. Century avers that Blaine has admitted that Rotec's survey reports confirm conformance with TR-13 and that Blaine's corporate representative, Mark Brodd, testified that Blaine represented to ATI that Century Steel's work complied with the plans and specifications of the Contract at the time Blaine submitted its applications for payment.

With this factual background in mind, which is clearly replete with conflicting record evidence and contentions, we now turn to the pending motion.

### III.    **Standard of Review**

Summary judgment is appropriate where there is no genuine issue of material fact as to a particular claim or any part of a claim, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). While the non-moving party is entitled to have all inferences drawn

in its favor, to prevail the "opposing party may not rest upon the mere allegations in or denials of the pleadings; its response . . . must set forth specific facts showing there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). A genuine factual dispute is "material" to the claim or issue on which summary judgment is sought only if it might affect the outcome of the claim or issue under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Thus, to withstand summary judgment, a non-moving party must demonstrate the existence of evidence that would support a judgment in its favor at trial on the issue. *Id.; Saldana*, 260 F.3d at 232.

### IV. Discussion

Century Steel argues that Blaine is required to release Century Steel's retainage under the terms of the Subcontract as well as the Pennsylvania Contractor and Subcontractor Payment Act ("CASPA"), 73 Pa. Cons. Stat. § 501 *et seq.* (1994), the interpretation of which it contends are questions of law suitable for summary judgment.

#### A. CASPA

"The thrust of the C[A]SPA is to require timely payments to contractors and subcontractors who perform construction work on Pennsylvania real estate under contract and to provide remedies if timely payment is not made." *Stivason v. Timberline Post & Beam Structures Co.*, 947 A.2d 1279, 1283 (Pa. Super. 2008).

> CASPA [is] a comprehensive statute enacted in 1994 to cure abuses within the building industry involving payments due from owners to contractors, contractors to subcontractors, and subcontractors to other subcontractors. The underlying purpose of CASPA is to protect contractors and subcontractors and to encourage fair dealing among parties to a construction contract. The statute provides rules and deadlines to ensure prompt payments, to discourage unreasonable withholding of payments, and to address the matter of progress payments and retainages. Under circumstances prescribed in the statute, interest, penalty, attorney fees and litigation expenses may be imposed on an owner, contractor or

8

subcontractor who fails to make payment to a contractor or subcontractor in compliance with the statute.

*Prieto Corp. v. Gambone Const. Co.*, 100 A.3d 602, 607 (Pa. Super. 2014), *citing Zimmerman v. Harrisburg Fudd I, L.P.,* 984 A.2d 497, 500-501 (Pa. Super. 2009).

Section 509 of CASPA states:

**(a) Time for payment.--**If payments under a construction contract are subject to retainage, any amounts which have been retained during the performance of the contract and which are due to be released to the contractor upon final completion shall be paid within 30 days after final acceptance of the work.

**(b) Agreement between contractor and subcontractor.--**If an owner is not withholding retainage, a contractor may withhold retainage from a subcontractor in accordance with their agreement. The retainage shall be paid within 30 days after final acceptance of the work.

**(c) Payment of retainage to subcontractors.--**A contractor shall pay to the contractor's subcontractors, and each subcontractor shall in turn pay to the subcontractor's subcontractors, within 14 days after receipt of the retainage, the full amount due each subcontractor.

**(d) Withholding acceptance or failure to pay retainage.--**If an owner, contractor or subcontractor unreasonably withholds acceptance of work or fails to pay retainage as required by this section, the owner, contractor or subcontractor shall be subject to the payment of interest at the rate established in section 5(d) on the balance due and owing on the date acceptance was unreasonably withheld or the date the retainage was due and owing, whichever is applicable. The owner, contractor or subcontractor shall also be subject to the provisions of section 12.

73 Pa. Cons. Stat. § 509 (1994).

Century Steel argues that Blaine is required to release Century Steel's retainage within 14 days after receipt from ATI as set forth in Section 509(c).

There is no dispute that the Agreement between ATI and Blaine provides that all remaining monies on the Contract have been paid by ATI to Blaine. Both ATI and Blaine's counsel have confirmed that payment has been made by ATI to Blaine on or before August 19,

2015. As such, Century Steel argues, Blaine was required to release Century Steel's retainage within 14 days of receipt. In addition, Century Steel argues that to the extent Blaine's position is that the withholding of the retainage was to satisfy any unquantified or unissued backcharges under the Subcontract, Blaine was still required to release the retainage within 30 days after final acceptance under Section 509(b), which time, Century Steel argues, has already passed. "If an owner is not withholding retainage, a contractor may withhold retainage from a subcontractor in accordance with their agreement," but even then, "[t]he retainage shall be paid within 30 days after final acceptance of the work." 73 Pa. Cons. Stat. § 509(b).

In response, Blaine argues Century Steel ignores those provisions of CASPA that support Blaine's withholding of retainage because Century Steel did not complete its work in accordance with the requirements of its subcontract. Blaine asserts it has incurred costs in excess of what is owed to Century Steel to make the building compliant with TR-13. According to Blaine, while Century Steel correctly points out in its motion that Blaine has currently allocated approximately $160,000 in backcharges to Century Steel for certain deficiencies in its work, there is approximately $2,500,000 in additional remediation costs that Blaine seeks to recover in this lawsuit for bringing the steel into compliance, but which costs have not yet been allocated as between Century Steel, Merrill, and/or HOH. Blaine argues that because Century Steel, Merrill and HOH each blame the others for the deficiencies, Century Steel's liability is a fact question for the jury to decide. Blaine notes that CASPA allows Blaine to withhold Century Steel's contract balance until that issue has been decided.

Blaine also notes that Sections 504 and 507 of CASPA expressly require performance in accordance with the contract terms in order for Century Steel to be entitled to payment. 73 Pa Cons. Stat §§504, 507(a). This is clear. Section 504 provides that "[p]erformance by a

contractor or a subcontractor in *accordance with the provisions of a contract* shall entitle the contractor or subcontractor to payment from the party with whom the contractor or subcontractor has contracted." 73 P.S. § 504 (emphasis added).  Section 507(a) states:

**(a) Entitlement to payment.--**Performance by a subcontractor in accordance with the provisions of the contract shall entitle the subcontractor to payment from the party with whom the subcontractor has contracted.

73 Pa. Cons. Stat. §507(a).

Finally, Century Steel argues that Blaine is not entitled to withhold Century Steel's retainage for any alleged backcharges even for 30 days under Section 511 of CASPA, as it has not provided timely notice of such withholding. Section 511 states:

**§ 511. Contractor's withholding of payment for good faith claims**

**(a) Authority to withhold.--**The contractor or subcontractor may withhold payment from any subcontractor responsible for a deficiency item. The contractor or subcontractor shall pay any subcontractor according to the provisions of this act for any item which appears on the invoice and has been satisfactorily completed.

**(b) Notice.--**If a contractor or subcontractor withholds payment from a subcontractor for a deficiency item, it must notify the subcontractor or supplier and the owner of the reason within seven calendar days of the date after receipt of the notice of the deficiency item.

73 Pa. Cons. Stat. § 511 (1994).

A "deficiency item" is defined in Section 502 as "[w]ork performed but which the owner, contractor or the inspector will not certify as being completed according to the specifications of a construction contract." 73 Pa. Cons. Stat. § 502.  Thus, while Section 511(a) allows a contractor to withhold payment from a subcontractor for "deficiency items," Section 511(b) provides that "[i]f a contractor or subcontractor withholds payment from a subcontractor for a deficiency item, it must notify the subcontractor or supplier and the owner of the reason within seven calendar

days of the date after receipt of the notice of the deficiency item." Blaine has acknowledged that the "non-compliance issues" referred to the "Initial Disclosures exchanged by all of the parties" in September 2014, were well beyond the seven day requirement of Section 511(b). Thus, Century Steel argues, Blaine has waived any alleged "deficiency item" through its conduct, and is not entitled to withhold Century Steel's retainage under Section 511 of CASPA.

In response to Century Steel's argument that it failed to timely notice deficiencies, Blaine states that "there is evidence from which a jury could find that Blaine complied with the requirements of CASPA to provide notice of the deficient work. Blaine advised Century Steel of the TR-13 and gusset deficiencies on multiple occasions both verbally and in letters and emails, some of which are included as Exhibits 6 through 8 of Blaine's Appendix.' [ECF No. 186 at 9]. We agree.

Exhibit 6 is an email dated June 5, 2012 from Roy Sexton, Senior Project Superintendent at Blaine to Orville Osch at Century Steel. In that email Sexton wrote:

> Orville,
>
> RE: Tech 13 information submitted by us to HOH. ***This information shows the steel out of the Tech 13 guidelines.*** We just set [sic] through another conference call with Darin and all and he drilled us on not having this information submitted to them for review and HOH approval for the crane rails and steel.
>
> ***We have asked that Century get the steel as required per contract to meet the Tech 13 contract requirements several times and have yet to receive documents that HOH will approve.***
>
> ***We have got to get this done and behind us, not resolving and completing the Tech 13 requirement is not acceptable.***

[ECF No. 188- 6] (emphasis added). There are other emails and correspondence wherein Blaine has advised Century Steel of deficiency items, both before and after Blaine's July, 2015 Agreement with ATI. [ECF Nos. 188-7, 188-8, 175-4].

We note that the testimony of Century Steel's corporate representative, cited *supra*, supports Blaine's argument that Century Steel did not initially meet the requirements of TR-13. James Schueler admitted that Century Steel was not able to align the rail to meet TR-13. And Rubbie Greenwald characterized TR-13 as a "goal" which it came close to achieving, but Blaine did achieve upon remediation. That ATI required compliance with requirements of TR-13 does not appear to be in dispute. That Century Steel knew about the requirements does not appear to be in dispute. We concur with Blaine that since Century Steel's own witnesses have conceded that Century Steel's work was not in compliance with TR-13 and Blaine has incurred significant costs to remediate the work to achieve TR-13 compliance, there is evidence from which a jury could conclude that Blaine's withholding of Century Steel's contract balance was in good faith and reasonable. *Quinn Const., Inc. v. RC Dolner LLC,* 187 F. App'x 129, 131 (3d Cir. 2006)(affirming district court's determination that contractor's withholding of a payment to subcontractor is justified when based on good-faith belief that subcontractor had been deficient in its performance; thus, subcontractor's final payment was not "wrongfully withheld" or subject to the penalty provisions in CASPA). Moreover, the plain language of the statute states that the payment entitlement only arises if there is performance in accordance with contract terms, indeed, if final acceptance of the work has occurred. Final acceptance is at issue in this case. The evidence of record supports Blaine's contention that ATI continues to take the position in writing that final acceptance has not occurred, despite conflicting language of the contract that the warranty between Blaine and ATI commenced post-acceptance.

Furthermore, Century Steel argues that even if we were to find that adequate notification was issued, the amount withheld by Blaine, at least $1,357,350.50, does not bear any reasonable relationship to the value of the alleged deficiency items against Century Steel (alleged value of

13

$160,155.45) Century Steel notes that in a case where $262,330 was withheld against a $120,000 claim, the Pennsylvania Superior Court held that the amount withheld did not bear a "reasonable relation" to the claim, and affirmed a trial court decision awarding interest and penalties under Section 512 of CASPA. *Imperial Excavating and Paving, LLC v. Rizzetto Const. Mgmt., Inc.,* 935 A.2d 557, 564 (2007).

After a careful review of the record evidence, we conclude that there is a genuine issue of material fact as to the adequacy and timeliness of Blaine's notice, as well as the reasonableness of the amount withheld. Courts have held that a genuine issue of material fact as to whether project owner had accepted work as final precluded summary judgment for contractor on subcontractor's claim for retainage under CASPA. *Sauer Inc. v. Honeywell Building Solutions SES Corp.*, 742 F.Supp.2d 709 (W.D. Pa.2010). In *Alstom Power, Inc. v. RMF Indus. Contracting, Inc.*, 418 F.Supp.2d 766, (W.D. Pa.2006), the court denied the unpaid subcontractor's motion for summary judgment under CASPA, finding genuine issues of material fact regarding whether power plant contractor withheld payment to generator subcontractor on disputed invoices in good faith and whether amount withheld bore reasonable relationship to value of contractor's claims.

B. **Subcontract**

Century Steel argues that Blaine is required to release Century Steel's retainage under various sections of the Subcontract.

According to Century Steel, Section 5.2.5 ("Time of Payment") of the Subcontract requires Blaine to pay Century Steel "no later than seven (7) days after receipt" by Blaine of payment by ATI. Century Steel also relies upon Section 5.2.2 ("Retainage") which requires that "the Subcontractors retainage shall also be reduced when the Subcontractor's Work has attained

the same percentage of completion and the Contractor's retainage for the subcontractor's Work has been so reduced by the Owner."

Blaine argues that Sections 5.2.2, 5.2.5 and 5.3.3(b) must be read in harmony with other provisions, notably, 5.2.7, which allow Blaine to withhold retainage for work that is not in compliance with contract documents. Century Steel acknowledges that Blaine could withhold "backcharges" under Section 5.2.7 of the Subcontract, but asserts that Blaine would need to issue a written deduct Change Order, which it has not done, and regardless, any backcharge must also be asserted within a reasonable time to be valid (see, e.g., CASPA Section 511(b), which requires notification of deficiency items within seven (7) days). Moreover, as explained above, Century Steel argues that the amount withheld must bear a reasonable relationship to the backcharges asserted.

In addition, Century Steel argues that Blaine is required to pay Century Steel's retainage under Section 5.3 of the Subcontract. First, at Section 5.3.3(b) it requires that the Subcontractor be paid "within seven (7) days after receipt by the Contractor of final payment by the Owner for such Subcontractor's Work." Section 5.3.3(a) of the Subcontract also notes "unknown defective work and noncompliance with the Contract Documents or warranties" as exceptions to "Owner's waiver of all claims related to Subcontractor's Work," which is otherwise required.

We find that there is a genuine issue of material fact as to whether there has been a breach of the subcontract, and that a reasonable factfinder could find that Blaine's withholding was reasonable in light of the fact that the record evidence that Century Steel itself acknowledged it did not initially complete its work in compliance with TR-13 requirements, and it is appears to be undisputed that Blaine spent a large sum getting the building into compliance.

As for the reasonableness of the amount of retainage withheld, the full extent of the backcharge is contested and best determined by the factfinder.

V.      **Conclusion**

Accordingly, for the reasons stated herein, Century Steel Erectors Company's Motion for Summary Judgment is denied. An appropriate Order follows.

>                                                  /s/   *Robert C. Mitchell*
>                                                  Robert C. Mitchell
>                                                  U.S. Magistrate Judge

cc: record counsel via CM-ECF

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MERRILL IRON & STEEL, INC., ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 14-221 |
| vs. ) | |
| ) | |
| BLAINE CONSTRUCTION ) | |
| CORPORATION, *et al*., ) | |

## ORDER

AND NOW, to-wit, this 7th day of March, 2016, for the reasons stated in the Opinion filed contemporaneously herewith, it is hereby ORDERED, ADJUDGED and DECREED that the Motion for Partial Summary Judgment filed on behalf of Century Steel Erectors Company [ECF No. 172] be and the same hereby is DENIED.

/s/ *Robert C. Mitchell*
Robert C. Mitchell
U.S. Magistrate Judge

cc: record counsel via CM-ECF